MARK SIZEMORE *v.* STATE OF INDIANA.

[No. 1-973A169. Filed March 19, 1974. Rehearing denied April 23, 1974. Transfer denied September 10, 1974.]

550

*Ferd Samper, Jr., Samper and Samper,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *David A. Miller,* Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant Mark Sizemore appeals from a conviction of possession of dangerous drugs, to-wit: less than twenty-five grams of marijuana, and presents the following issues for review:

1. Whether the trial court erred in overruling appellant's motion to quash the charging affidavit.

2. Whether the trial court erred in overruling appellant's motion to suppress evidence discovered on his person through a search incident to arrest.

3. Whether the evidence was sufficient to prove the identity of the alleged drug substance.

A search of the record to determine the facts most favorable to the State reveals the following sequence of events leading up to appellant's arrest.

While on patrol duty in the early morning hours of January 16, 1972, officers Terry Worley and John Earl of the Connersville Police Department observed a red van pull away from the curb in a fast manner. Pulling in behind the van, they noticed that one of its tail lights was not illuminated. While following the van, they observed it cross the center line of the road at least three times. At one point, the van was driven left of the center line for approximately three blocks. The officers then stopped the vehicle on the basis of the faulty tail light and erratic driving.

Appellant, the driver and sole occupant of the vehicle, was immediately arrested for the violation of operating the vehicle with the tail light burned out. Officer Worley observed appellant as he was being questioned by officer Earl. Worley testified that on the basis of appellant's driving and manner during questioning, he formed the opinion that appellant was driving under the influence and decided to place him under arrest for that offense.

Prior to making a formal arrest and placing appellant in the patrol car, officer Worley conducted a pat down search of appellant's person. As he patted the front of appellant's

clothing, Worley discovered a bulge in his shirt pocket. To Worley's inquiry concerning what was in the pocket, appellant responded that he did not know. Worley then reached into appellant's pocket and removed a hand rolled cigarette which was later identified by expert testimony as containing marijuana.

Appellant was then informed that he was under arrest for driving while under the influence and illegal possession of marijuana. After being advised of his constitutional rights, appellant was placed in the patrol car and taken to police headquarters.

Trial by court on a two count affidavit resulted in findings of not guilty on the charge of driving under the influence of dangerous drugs and guilty on the charge of possession of marijuana.

## ISSUE 1.

Prior to trial, appellant filed a motion to quash the affidavit on the grounds that it did not state the offense charged with sufficient certainty. Error is now alleged in the decision of the trial court overruling the motion.

That part of the affidavit to which the motion was directed charges that appellant ". . . did then and there unlawfully have possession of or have under his control a certain dangerous drug, to-wit: less than 25 grams of Marijuana, . . . ." Appellant submits that the affidavit fails to state a public offense due to the insertion of the phrase "have under his control," since IC 1971, 16-6-8-3; Ind. Ann. Stat. § 35-3333 (c) (Burns 1973 Cum. Supp.) proscribes only "possession" or "sale" of dangerous drugs. The crux of appellant's contention is that there is a vast different in meaning between "possession" and the phrase "have under his control". However, appellant has offered no argument to enlighten us as to this difference. Moreover, we note that "control" is specified as

an element of·"possession" at *Black's Law Dictionary*, p. 1325 (Rev. 4th Ed. 1968).

The relevant question for our determination is whether the affidavit is sufficient to inform a man of common intelligence that he is being charged with possession of a dangerous drug and therefore apprise him of the nature of the charges that he is to defend. In our opinion, this question must be answered in the affirmative. See, *Thomas* v. *State* (1968), 251 Ind. 76, 238 N.E.2d 20.

Further, appellant's contention must fail since he has failed to demonstrate any prejudice resulting from this alleged defect in the affidavit. To constitute grounds for reversal, defects or imperfections in the affidavit must have prejudiced the substantial rights of the defendant. *Thorne* v. *State* (1973), 260 Ind. 70, 292 N.E.2d 607.

The record reveals that appellant was clearly aware of the nature of the crime with which he was being charged. We therefore conclude that the trial court did not err in overruling appellant's motion to quash.

ISSUE 2.

Appellant next argues that the trial court erred in overruling his motion to suppress the evidence seized from his person at the time of his arrest.

The question of the validity of a search of an arrestee's person in relation to Fourth Amendment constitutional guarantees was recently considered by the United States Supreme Court in *United States* v. *Robinson* (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 456, and a companion case *Gustafson* v. *Florida* (1973), 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 488. These cases centered upon the admissibility, in prosecutions for unlawful possession of drug substances, of evidence seized

from the defendants' persons during searches incident to arrests for traffic code violations.[1]

The court found that in each case the evidence was seized as a result of a lawful search incident to arrest. In *Robinson*, it was held:

> ". . . The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."[2]

In arriving at this holding, the court emphasized the historial distinction between a search of the person of the arrestee and a search of the area beyond his person but within his control.

Through an examination of previous decisions dealing with the subject, Justice Rehnquist concluded:

> "Throughout the series of cases in which the Court has addressed the second proposition relating to a search incident to a lawful arrest—the permissible area beyond the person of the arrestee which such a search may cover—*no doubt has been expressed as to the unqualified authority of the arresting authority to search the person of the arrestee. E.g., Carroll* v. *United States*, 267 U.S. 132 (1925) ; *Marron* v. *United States*, 275 U.S. 192 (1927) ; *Go-Bart*

---

1. Respondent Robinson and petitioner Gustafson were arrested, respectively, for "operating after revocation and obtaining a permit by misrepresentation," and "failure to have his vehicle operator's license in his possession."

2. While the court offers no direct definition of the term "custodial arrest," it is noted in the opinions that Robinson and Gustafson were (1) arrested and (2) taken into custody in the sense that the officers intended to transport them to a police facility.

*Co.* v. *United States,* 282 U.S. 344 (1931) ; *United States* v. *Lefkowitz,* 285 U.S. 452 (1932) ; *Harris* v. *United States,* 331 U.S. 145 (1947) ; *Trupiano* v. *United States,* 334 U.S. 699 (1948) ; *United States* v. *Rabinowitz,* 339 U.S. 56 (1950) ; *Preston* v. *United States,* 376 U.S. 364 (1964) ; *Chimel* v. *California,* 395 U.S. 752 (1969)." (Our emphasis.)

In support of this conclusion, the court quoted the following statement from *Chimel,* the most recent of the cases considering the validity of a search of the area beyond the person of the arrestee:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction."

*Terry* v. *Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, was distinguished since it dealt not with a search incident to an arrest, but rather with a "frisk" incident to an investigative stop based on less than probable cause to arrest. The court noted that the *Terry* opinion:

". . . explicitly recognized that there is a 'distinction in purpose, character, and extent between a search incident to an arrest and a limited search for weapons':

'The former, although justified in part by the acknowledged necessity to protect the arresting officer from assault with a concealed weapon, *Preston* v. *United States,* 376 U.S. 364, 367 (1964), is also justified on other grounds, *ibid.,* and can therefore involve a relatively extensive exploration of the person. A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. *Warden* v. *Hayden,* 387 U.S. 294, 310 (1967) (MR. JUSTICE FORTAS, concurring). Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a 'full' search even though it remains a serious intrusion.

'. . . An arrest is a wholly different type of intrusion upon the individual freedom from a limited search for weapons, and the interests each is designed to serve are likewise quite different. An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows. The protective search for weapons, on the other hand, constitutes a brief, though far from inconsiderable, intrusion upon the sanctity of the person.' 392 U.S., at 25-26 (footnote omitted).

*"Terry,* therefore, affords no basis to carry over to a probable cause arrest the limitations this Court placed on a stop-and-frisk search permissible without probable cause."

While *Robinson* and *Gustafson* represent a significant step toward clarification in a particularly confused area of the law, we cannot terminate our inquiry at this point and apply the standards of those decisions to the facts and circumstances presented in the instant case. Since these two decisions have not yet been applied to Indiana law, it remains for us to determine whether the decisions of this court and our Supreme Court permit the conclusion that a search of an arrestee's person incident to a valid custodial arrest is "reasonable", absent additional justification, by virtue of the arrest alone.

In *Paxton et al.* v. *State* (1970), 255 Ind. 264, 263 N.E.2d 636, our Supreme Court addressed the question of the nature and scope of a search that can be made incident to a valid arrest for a traffic violation. At trial, appellant Paxton unsuccessfully sought to have suppressed evidence pertaining to charges of theft and second degree burglary, which evidence was seized from his automobile during a search incident to an arrest for reckless driving.

Based upon an analysis of several of the United States Supreme Court cases which were discussed in *Robinson* and *Gustafson,* the court reversed Paxton's conviction holding that his motion to suppress evidence should have been sustained.

The court premised its reasoning on the following statement from *Trupiano* v. *United States* (1948), 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663:

> "A search or seizure without a warrant as an incident to a lawful arrest has always been considered to be a strictly limited right. It grows out of the inherent necessities of the situation at the time of the arrest. But there must be something more in the way of necessity than merely a lawful arrest."

Of *Chimel,* the court said:

> ". . . The Courts holding expressly utilized the reasoning of *Trupiano* by recognizing that the exigencies of the circumstances often required immediate action on the part of the arresting officer to prevent harm to himself or the destruction of evidence.
>
> * * *
>
> ". . . it was made clear that the *necessities of the situation at the time of the arrest* justify the warrantless intrusion, not the fact of the arrest."

Following an application of the guidelines expressed in *Terry, supra,* the court concluded:

> ". . . Thus, it would clearly be unreasonable to sanction a search incident to an arrest, absent other factors, where the arresting officer had no reason to suspect that he was in danger or where there was not probable cause to believe that there was destructible evidence relating to the crime within the suspect's immediate control.
>
> * * *
>
> "Clearly, the reasonableness of a warrantless search incident to an arrest in terms of both its initiation and scope must be determined from the inherent necessities of the circumstances surrounding the arrest."

Finally, the court noted that the guidelines set out in *Chimel* for the permissible scope of a search incident to arrest are extended somewhat when a person is arrested in an automobile. The exigent circumstances existing in such a case permit a search of the entire automobile without regard to the officer's safety or the possible destruction of evidence in

the presence of probable cause to believe that seizable items are contained therein. See, *Carroll* v. *United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

An application of these principles to the facts resulted in a conclusion that the search of Paxton's automobile was not reasonable. Since Paxton and his companions had been placed in the squad car prior to the search wherein the evidence sought to be suppressed was discovered, the officers no longer had reason to perceive danger from any weapon secreted in the automobile, nor could the men have destroyed any evidence contained in the automobile. Further, the court was unable to conceive of any seizable items which could be present in the car relating to the arrest for reckless driving.

In light of the recent holdings in *Robinson* and *Gustafson*, it is clear that *Paxton* is distinguishable from the instant case. *Paxton* specifically confronted the issue of what the United States Supreme Court in *Robinson* has termed ". . . the second proposition relating to a search incident to a lawful arrest—the permissible area beyond the person of the arrestee which such a search may cover. . . ." Further, we emphasize that the principles underlying the *Paxton* decision were derived from cases which, according to *Robinson*, do not speak to the issue of the search of an arrestee's *person* incident to an arrest. Given this distinction, subsequent Indiana cases testing the validity of searches of automobiles against *Paxton* standards are likewise distinguishable from the instant case. *E.g., Smith* v. *State* (1971), 256 Ind. 603, 271 N.E.2d 133; *Sayne* v. *State* (1972), 258 Ind. 97, 279 N.E.2d 196.

Two recent cases, one decided by our Supreme Court and another by this court, appear to accord implicit recognition to the distinction between the search of an arrestee's person and the search of the area beyond his person but within his control. In *Sanchez* v. *State* (1971), 256 Ind. 140, 267 N.E.2d 374, appellant's conviction based on evidence seized from his person pursuant to a search incident to arrest was affirmed.

Justice Prentice, speaking for a unanimous Court, distinguished *Chimel,* saying that there was "no similarity between the circumstances of that case and the one at bar." In *Walker* v. *State* (1973), 155 Ind. App. 404, 293 N.E.2d 35 (transfer denied), this court said:

> "In *Chimel* there was no basic disagreement between the majority and the dissenters over the question of a search of the person at the time and incident to a valid arrest. Likewise, in Paxton v. State, [255] Ind. [264], 263 N.E.2d 636 (1970), there was no basic difference in our own Supreme Court when it followed and applied *Chimel.* In *Paxton* as in *Chimel* both the majority and dissenting opinions were premised on the accepted proposition that an arresting police officer may, incident to a valid arrest, search the person and the clothing of the arrestee."

In reaching the above decisions, the courts quoted that portion of the text of *Chimel* which, according to *Robinson,* recognizes the unqualified authority of the arresting officer to search the person of the arrestee.

On the basis of the foregoing analysis, we conclude that the principles expressed in *Robinson* and *Gustafson* are directly applicable and dispositive of the issue of the validity of the search of Sizemore's person in the instant case.

Initially, we must disagree with Sizemore's apparent assumption that the search of his person was incidental to his arrest for operating his vehicle with a tail light burned out. The following testimony of officer Terry Worley during the hearing on the motion to suppress reveals that the search was incident to a valid arrest for driving under the influence.

> "Q. And, uh, why did you give this search?
> A. I would say that after the coordination test and everything I felt like he was under the influence of something. I was going to place him under arrest. I was going to place him in the vehicle, and before I do this I must search him for anything that might harm himself or me."

A search incident to arrest is not rendered invalid merely because it precedes a formal arrest or notice of arrest where

probable cause for the arrest exists prior to the search. *Mann* v. *State* (1973), 155 Ind. App. 261, 292 N.E.2d 635; *Smith* v. *State, supra; Paxton* v. *State, supra; Hadley* v. *State* (1968), 251 Ind. 24, 238 N.E.2d 888. The record in the instant case clearly reveals that on the basis of appellant's erratic driving and abnormal behavior after being stopped, the officers were provided with probable cause for the arrest prior to the search. The testimony at the hearing on the motion to suppress reveals that the officers were effectuating a "custodial arrest" within the usage of that term in *Robinson* and *Gustafson,* in that Sizemore was being taken into custody for driving under the influence.[3]

We therefore hold that the search of Sizemore's person fell within a valid exception to the warrant requirement of the Fourth Amendment to the Constitution. That search being incident to a lawful custodial arrest based on probable cause, it was a "reasonable" intrusion under that amendment and requires no additional justification.

The only limitation imposed upon an officer in searching an arrestee's person incident to a valid custodial arrest is found in the closing paragraph of *Robinson:*

". . . While thorough, the search partook of none of the extreme or patently abusive characteristics which were held to violate the Due process Clause of the Fourteenth Amendment in *Rochin* v. *California* 342 U.S. 165 (1952)."

---

3. IC 1971, 9-4-1-131 (Burns Code Edition) prescribes the procedure for release of a person arrested for a violation punishable as a misdemeanor under Chapter One of the Uniform Act Regulating Traffic on Highways upon the giving of a written promise to appear in court. This section has been interpreted as mandating release by the arresting officer where the arrestee signs such a written promise. Op. Atty.-Gen. 1961, No. 17, p. 83. We express grave doubt that such an arrest could be construed as a "custodial arrest" within the terms of *Robinson, supra,* and *Gustafson, supra.* However, we need not address that issue in this decision since the privilege of release conferred under this section does not apply to the offense of driving under the influence. *McClanahan* v. *State* (1954), 233 Ind. 317, 117 N.E.2d 749. See also, Op. Atty.-Gen. 1969, No. 41, p. 124.

While the search in the instant case might be categorized as thorough, it was not extreme or abusive in character. It therefore follows that the trial court did not err in overruling Sizemore's motion to suppress.

## ISSUE 3.

Sizemore next contends that the evidence is insufficient to support his conviction. Specifically, he argues that the State did not prove beyond a reasonable doubt that the substance seized from his person was a dangerous drug.

At trial, Fayette County Sheriff L. Max Huffman testified that he performed a preliminary field test on the substance using a "Val-Tox" testing device. The results of this test were positive, indicating the presence of marijuana. Paul Asa, Assistant Director of the Indiana State Police Laboratory, also testified that the substance in question contained marijuana. Asa's opinion was based on microscopic and chemical examination, including thin layer chromotography. He further testified that he had served as a laboratory technician for approximately ten years and had attended federal and state schools relating to dangerous drugs.

Appellant initially infers that Asa lacked sufficient qualifications to render an opinion in this case. The question of whether a witness is qualified to give an expert opinion rests within the sound discretion of the trial court, and the court's decision in this area will not be disturbed absent a showing of manifest abuse of that discretion. *Patterson* v. *State* (1970), 255 Ind. 22, 262 N.E. 2d 520; *Tyler* v. *State* (1968), 250 Ind. 419, 236 N.E.2d 815.

Asa testified concerning his training and experience in this area and the trial court apparently concluded on the basis of this testimony that he was sufficiently qualified to render an opinion as to the identity of the substance tested. In our opinion, appellant has failed to demonstrate any abuse of discretion.

Sizemore's main contention with respect to this issue is that the State failed to prove the identity of the substance in question beyond a reasonable doubt. At the time of the offense, prior to the 1973 Amendment, IC 1971, 16-6-8-2; Ind. Ann. Stat. § 35-3332 (Burns 1973 Cum. Supp.) read in part:

"... (j) 'Dangerous drug' means ... (4) any hallucinogenic, psychedelic, psychogenic drug or substance including but not limited to cannabis or lysergic acid diethylamide, commonly known as LSD. ...

\* \* \*

"(1) 'Cannabis' includes all parts of the plant Cannabis sativa, whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture or preparation of such plant, its seeds, or resin, including specifically the drugs known as American hemp, marijuana, Indian hemp or hashish, as used in cigarettes, or in any other articles, compounds, mixtures, preparations, or products whatsoever, but shall not include the mature stalks of the plant; fiber produced from such stalks, oil or cake made from the seeds of such plant; any compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except resin extracted therefrom) ; fiber, oil or cake; or the sterilized seed of such plant which is incapable of germination."

During cross-examination, Asa was asked if he tested the alleged drug substance to determine whether it was cannabis indica or cannabis sativa. Asa responded that he had not. Appellant argues that only cannabis sativa is a dangerous drug within the terms of the statute and that in the absence of a test to distinguish it from cannabis indica, the State has failed to prove that the substance in question is a dangerous drug.

This contention was answered in *United States* v. *Moore* (3rd Cir. 1971), 446 F. 2d 448, as follows:

"Before this argument may have any validity, Cannabis indica must in fact not be a substance called Cannabis sativa L. or marihuana.

"Marihuana, a term of Mexican origin, is the dried leaves and flowering tops of a plant species commonly known as

hemp. Botanically, the hemp plant is called Cannabis sativa L. There is only one species of this plant. Leary v. United States, 395 U.S. 6, 50, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969). However, because of the difference in soil content and climatic conditions, the plant grown in various parts of the world is not physically the same. For example, Mexican marihuana is more potent than domestic and is consequently preferred by smokers. Leary v. United States, *supra,* at 49, 89 S. Ct. 1532. Cannabis indica is the name given to Cannabis sativa L. grown in India."

See also, The District Court opinion in *Moore,* at 330 F. Supp. 684 (E.D. Pa. 1970).

Appellant's contention of error must therefore fail.

Finding no reversible error in the trial proceedings, judgment is hereby affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 308 N.E.2d 400.