REID COLLETT *v.* STATE OF INDIANA.

[No. 3-774A125.  Filed December 10, 1975.]

186

*Ronald V. Aungst,* of Valparaiso, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert C. Colker,* Assistant Attorney General, for appellee.

STATON, P.J.—Collett was found guilty by a jury of carrying a gun without a license, and he was sentenced to not more than six months in the Porter County Jail. Collett raises four issues on appeal:

Issue One:    Did the pat-down search of Collett's person revealing a .38 caliber Smith and Wesson revolver violate the Fourth Amendment?

Issue Two: Did the trial court err in excluding informant identification testimony?

Issue Three: Did the trial court err in allowing testimony regarding Collett's prior arrests and convictions for crimes of violence?

Issue Four: Did the trial court err in admitting into evidence a photograph of Collett taken on the day of his arrest?

We affirm.

I.

*Illegal Search*

Collett was convicted of carrying a gun without a license. At trial, Collett attempted to suppress the gun, a .38 caliber revolver, and all testimony pertaining thereto on the ground that the revolver was obtained pursuant to an illegal search of his person and should be suppressed as the fruit of an illegal search. The trial court overruled Collett's trial motion to suppress, and on appeal, Collett contends that the overruling of his motion to suppress was erroneous because the revolver was seized pursuant to an illegal search.[1] As discussed below, we find that there was sufficient evidence presented at trial to support the trial court's determination that the pat-down search was legal.

When a search is made without a warrant, as in this case, the State has the burden of showing that the search fell within one of the exceptions to the warrant requirement of the Fourth Amendment of the United States Constitution. See also IND. CONST. art. 1, § 11. *Elliott* v. *State* (1974), 262 Ind. 413, 317 N.E.2d 173; *Johnson* v. *State* (1975), 163 Ind. App. 684, 325 N.E.2d 859. In reviewing the trial court's determination that the search was

---

1. Collett also claims error in the trial court's overruling of a pre-trial motion to suppress and a pre-trial motion for a protective order seeking suppression of the revolver and any testimony pertaining thereto. However, Collett has waived any contention of error as to these pre-trial attempts to suppress the gun by failing to make the testimony presented at the pre-trial suppression hearing a part of the record on appeal. See *Buchanan* v. *State* (1975), 263 Ind. 360, 332 N.E.2d 213.

legal, this Court may not weigh the evidence nor judge the credibility of the witnesses. We must construe all of the evidence and resolve all ambiguities in favor of the trial court's determination. *State* v. *Smithers* (1971), 256 Ind. 512, 269 N.E.2d 874.

At trial, prior to the overruling of Collett's motion to suppress, the State presented the following evidence regarding the warrantless search of Collett's person. At 3:30 A.M. on February 13, 1973, Officers Untch and Shinneman of the Portage Police Department observed a car stop in the middle of an intersection. The car crossed over the centerline when it turned right. The officers further observed the car traveling at approximately 35 miles per hour in a 20 mile per hour zone, and at one point, they observed the car narrowly miss a bridge abutment. Suspecting the driver of the automobile to be intoxicated, they motioned the driver to pull over. Collett, the driver, stopped, got out of his car and started walking back to the police car. He gave his driver's license to Officer Untch and gave Officer Shinneman permission to get the car registration from the glove compartment of his car. Officer Shinneman could not find the registration and asked Collett if he would get the registration from the car. Collett was entirely cooperative and did not make any threatening gestures. However, before Collett entered the car, Officer Shinneman stopped him and said, "Look, I can't let you go into the car. I got to pat you down." Officer Shinneman testified that he recognized Collett; he had knowledge that Collett carried a gun; and, for his own protection, he patted Collett down. Before the overruling of Collett's trial motion to suppress, it was clear that Officer Shinneman did not have personal knowledge that Collett carried a gun, but that he had received this information in the course of his duties as a police officer. After the overruling of Collett's trial motion to suppress, Officer Shinneman testified that the pat-down search of Collett for weapons revealed a .38 caliber revolver. Collett did not have a permit for the revolver. Later, on cross-

examination of Officer Shinneman, Collett established that Shinneman's gun information came from a subject incarcerated in the Lake County Jail.

On appeal, Collett contends that he was not under custodial arrest at the time of the pat-down search for weapons, and therefore, the revolver was seized pursuant to an illegal search. The State contends that even if Collett was not under custodial arrest at the time of the pat-down search, the revolver was properly admitted into evidence as the product of a lawful protective frisk for weapons. As discussed below, we conclude that the pat-down search of Collett's person for weapons was a valid search incident to a lawful investigative stop.

First of all, we agree with Collett's contention that the search in this case cannot be justified as a search incident to arrest. At the time the officers stopped Collett, they had observed Collett commit a violation of IC 1971, 9-4-1-57 (Burns Code Ed. Supp. 1975) (35 m.p.h. in a 20 m.p.h. zone). If the officers had stopped Collett for this minor traffic violation, it is clear that we would have to determine the permissible scope of a search incident to a valid arrest for a minor traffic offense. See *Paxton* v. *State* (1970), 255 Ind. 264, 263 N.E.2d 636; *Sayne* v. *State* (1972), 258 Ind. 97, 279 N.E.2d 196, *but see Frasier* v. *State* (1974), 262 Ind. 59, 312 N.E.2d 77, *cert. denied* 419 U.S. 1092, 95 S.Ct. 686, 42 L.Ed.2d 686 (1975). It is true in Indiana that a search incident to arrest is not rendered invalid merely because it precedes formal arrest or notice of arrest when probable cause for the arrest exists prior to the search. *Smith* v. *State* (1971), 256 Ind. 603, 271 N.E.2d 133; *Mann* v. *State* (1973), 155 Ind. App. 261, 292 N.E.2d 635; *Sizemore* v. *State* (1974), 159 Ind. App. 549, 308 N.E.2d 400.

The officers, Untch and Shinneman, did not stop Collett to arrest him for speeding. They did not pull Collett's automobile over immediately upon observing the speeding violation but continued to follow Collett's automobile. After ob-

serving Collett's automobile nearly collide with a bridge abutment, Officer Shinneman testified that he advised Officer Untch that they had better stop Collett's vehicle to check for the possibility of an intoxicated driver. After the initial stop, the officers determined that Collett was not intoxicated. However, Officer Shinneman testified that he noticed that there were rust rings on the lower portion of Collett's license plate leading Officer Shinneman to believe that the license plate might have been changed. Officer Shinneman stated that it was because of the rust rings that he desired to check Collett's registration and not because he was going to cite Collett for the traffic violation. By Officer Shinneman's own testimony, the officers merely stopped Collett's automobile to determine if the driver was driving under the influence.

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. *Terry* v. *Ohio* (1968), 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Elkins* v. *United States* (1960), 364 U.S. 206, 222, 80 S.Ct. 1437, 4 L.Ed.2d 1669. In *Terry* v. *Ohio, supra,* the United States Supreme Court held that not all investigative stops and subsequent pat-downs for weapons violate the Fourth Amendment's proscription against unreasonable searches and seizures. See also, e.g., *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738; *Lloyd* v. *State* (1975), 166 Ind. App. 248, 335 N.E.2d 232; *Bryant* v. *State* (1973), 157 Ind. App. 198, 299 N.E.2d 200. See also IC 1971, 35-3-1-1—35-3-1-3 (Burns Code Ed.). As pointed out in *Terry, supra,* 392 U.S. at 21, 88 S.Ct. 1868, in determining the reasonableness of the initial stop and a subsequent frisk for weapons, a balance must be struck between the need to stop and frisk and the invasion which the stop and frisk entails. The test for determining reasonableness enunciated in *Terry, supra,* 392 U.S. at 21-22, 88 S.Ct. 1868 is whether the facts available to the officer at the moment of the seizure or the search would warrant a person of reasonable caution in believing that the action taken was appropriate. In reviewing the trial court's

determination that the stop and frisk was reasonable, Terry requires this Court to consider: (1) whether the officer had reasonable grounds for approaching and detaining the subject; (2) whether the officer was justified in believing the subject was armed and dangerous; and (3) whether the search exceeded the permissible scope of a search for weapons.[2] See Bryant v. State, supra, 299 N.E.2d at 204.

In view of the officers' testimony regarding Collett's erratic driving, there can be no question in this case that a reasonable man would have believed the initial stop was warranted in the interest of protecting the motoring public as well as the suspected intoxicated driver. Under the facts of this case, the limited detention of Collett for the purpose of ascertaining whether he was intoxicated was not an unreasonable stop in violation of the Fourth Amendment.

The more difficult question is whether Officer Shinneman was justified in believing Collett was armed and dangerous. It is not every investigative stop that will support an incidental search for weapons. It is only when the officer has made a valid investigative stop and has reason to believe that the suspect is armed and dangerous that the officer may conduct a limited search for weapons. The purpose of this limited search for weapons after an investigative stop is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear for his safety or the safety of others. Adams v. Williams (1972), 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612. In discussing the reasonableness of a search for weapons in Terry, supra, 392 U.S. at 27, 88 S.Ct. 1883, the United States Supreme Court stated:

"Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer,

2. Since the search at issue revealed a weapon, this case raises no problems in regard to the proper scope of the search.

where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. Cf. *Beck* v. *Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Brinegar* v. *United States*, 338 U.S. 160, 174-176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949); *Stacey* v. *Emery*, 97 U.S. 642, 645, 24 L.Ed. 1035 (1878). And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. Cf. *Brinegar* v. *United States supra*."

In *Terry* v. *Ohio, supra,* the investigating officer stopped Terry on the reasonable belief that Terry was contemplating a daylight robbery. Under such circumstances, the United States Supreme Court held that the officer had reasonable grounds to believe that Terry was armed and dangerous. In the instant case, unlike the *Terry* case, the officer's belief that Collett was armed and dangerous did not arise under the circumstances justifying the initial stop. Immediately after stopping Collett, the officers ascertained that Collett was not intoxicated. However, Officer Shinneman testified that he desired to see Collett's registration because of the rust rings on Collett's license plate. Given the validity of the initial stop, this further detention of Collett for the limited purpose of checking Collett's registration was not unreasonable.[3] Officer Shinneman had permission from Collett to look into the glove compartment for the car registration. When he could not find the registration, he asked Collett to look for it. Officer Shinneman testified that he had information that Collett carried a gun and that he would be unable to see Collett's hands after he entered the car. For

3. See IC 1971, 9-1-4-5 (Burns Code Ed.) requiring the person driving or in control of a vehicle to display the vehicle's registration upon demand of a police officer.

his own protection, he stated that he patted Collett down for weapons.

Before the overruling of Collett's motion to suppress, the only evidence concerning the source of officer Shinneman's information that Collett carried a gun was that Officer Shinneman received this information in the course of his duties as a police officer. It was later established that Officer Shinneman's information came from a subject incarcerated in the Lake County Jail. The informant's identity and reliability were never established at trial.

The more refined question of law to be decided is whether Officer Shinneman acted reasonably in these circumstances. He observed Collett driving in excess of the speed limit, crossing the centerline while making a turn, and nearly striking a bridge abutment. When Officer Shinneman stopped Collett's car, he determined that Collett was not intoxicated, but he noticed rust rings around the license plate which indicated that the previous bolts had been removed. A further investigation was necessary to determine whether the car or the license plate had been stolen. A car registration check was necessary. He couldn't find the car's registration in the glove compartment. If Collett was to enter the car to search for the registration, his hands would be out of sight and his body movements would be hard to detect and control. Officer Shinneman's prior information that Collett carried a gun coupled with the circumstances warranted his belief that his safety or that of others might be in danger.

When the investigatory stop itself is based on information supplied by another person, rather than on the officer's personal observation, the information must carry some indicia of reliability to justify the initial stop. *Adams* v. *Williams, supra; Jackson* v. *State* (1973), 157 Ind. App. 662, 301 N.E.2d 370. However, when an officer has made a reasonable investigatory stop and realizes that he has information that the individual carries a gun, the

officer has a right to neutralize the threat of physical harm to himself and others during the investigative stop by patting the individual down for weapons—regardless of whether his information that the individual carries a gun has been verified or came from a "reliable" informant.[4]

Under the circumstances of this case, the pat-down search of Collett for weapons did not violate the Fourth Amendment, and the trial court did not err in denying Collett's trial motion to suppress the revolver and any testimony pertaining thereto.

## II.

### Excluded Testimony

At trial on direct examination, Officer Shinneman testified that he was concerned for his safety because he had information that Collett was known to carry a gun. Later, the trial court asked Officer Shinneman, "Had you received information in connection with your duties as a police officer that led you to believe that the subject might be armed." Officer Shinneman answered, "Yes." On recross-examination, Collett's attorney asked Officer Shinneman the following:

"Q. Larry, the information that you've indicated to Judge Douglas in response to his question where did that information come from?

"A. From a subject that is incarcerated in Lake County Criminal Jail.

"Q. Then it wasn't from another law enforcement agency as you've indicated before? It was from an informant, is that true?

"A. I would be more than glad to tell you the person's name."

The trial court, however, precluded any further testimony concerning the informant over objection by Collett's attorney. On appeal, Collett contends that had he been allowed to question Officer Shinneman regarding the informant's reliability,

---

4. At trial, Officer Shinneman offered to disclose the informant's name.

the trial court might have determined that the information received by Officer Shinneman was unreliable and might have granted the motion to suppress the revolver.

There is a general policy of non-disclosure of an informant's identity. *McCulley* v. *State* (1971), 257 Ind. 135, 272 N.E.2d 613. However, there are some instances when the defendant's rights to disclosure take precedence over the general policy of non-disclosure. *Roviaro* v. *United States* (1957), 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639; *Garner* v. *State* (1975), 163 Ind. App. 573, 325 N.E.2d 511; *McCulley* v. *State, supra.*

"If disclosure of the identity of an informant is relevant and helpful to the defense of an accused or is essential to the fair determination of a cause, disclosure is required unless the State shows a paramount interest in nondisclosure or an unwarranted risk to the life of the informant. . . ." *Garner* v. *State, supra,* 325 N.E.2d at 513.

When the informant's tip merely relates to the justification of a limited search for weapons, refusal to require disclosure of the informant's identity is not improper. *United States* v. *Poms* (4th Cir. 1973), 484 F.2d 919. Since we have held under Issue One that an establishment of the reliability of the informant was not necessary to justify the pat-down search for weapons, questions concerning the informant's identity and reliability were not relevant to either the suppression issue or the issue of guilt. The trial court did not err in precluding further questioning of Officer Shinneman regarding the informant's identity and reliability.

### III.

*Prior Arrests and Convictions*

While cross-examining Officer Shinneman, Collett's attorney elicited the following testimony:

"Q. Larry, let me ask you this: To your knowledge or any information that you have received from anyone else has Mr. Collett on any prior occasion been arrested and convicted of any charge involving the use of a deadly weapon?

"A. I think there is what we call an information sheet submitted from the FBI that—

"Q. Well, would you like to refer to that in order to answer my question?

"A. Yes, sir, 1971, sir.

"Q. Was there an arrest and a conviction?

"A. Just arrest, gun no permit.

"Q. Was there a conviction?

"A. I can't read it. It might possibly be one. It's blurred out on the back, I don't know."

On redirect examination, the State asked the following question:

"Q. Officer Shinneman, could you go through the FBI report and tell the court and jury about any arrest or conviction for crimes involving violence?"

Collett's attorney promptly objected on the ground that the question was not within the scope of cross-examination. The trial court overruled the objection and allowed Officer Shinneman to testify that Collett had been convicted of rape and assault with intent to rape. On appeal, Collett contends that the trial court erred in allowing into evidence the testimony concerning his past convictions, stressing the fact that he had not taken the witness stand or otherwise put his character in issue. He argues that the State should have been limited to questioning Officer Shinneman regarding his knowledge as to Collett's criminal history for offenses involving the use of a deadly weapon.

The scope and extent of redirect examination is a matter within the sound discretion of the trial court. *Madison* v. *State* (1971), 256 Ind. 353, 269 N.E.2d 164. *McDonald* v. *State* (1975), Ind. App., 333 N.E.2d 882. Generally redirect examination is limited to answering any new matter drawn out during cross-examination. See Mc-CORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 32 (2d ed. E. Cleary (1972)). On cross-examination of Officer Shinneman, the defense pursued the question of whether

Officer Shinneman's knowledge of Collett's criminal history was a factor contributing to the officer's fear for his safety. Collett was apparently attempting to prove that Officer Shinneman did not have adequate grounds to believe that Collett was armed and dangerous.[5] The State limited its re-direct examination to questions concerning Officer Shinneman's knowledge of prior arrests or convictions for crimes of violence. We can not say that the State's redirect examination regarding prior convictions for crimes of violence was beyond the scope of Collett's cross-examination regarding Officer Shinneman's fear for his safety. The trial court did not abuse its discretion in admitting such testimony.

## IV.

### Photograph

At trial, Officer Untch evidently made an in-court identification of an individual other than Collett. Officer Shinneman, however, identified Collett and testified that Collett was clean shaven on the date of his arrest, whereas at trial he had a moustache and goatee. During Officer Shinneman's direct examination, the State submitted a police photograph of Collett taken on the day of his arrest for admission into evidence. The picture was admitted over Collett's objection that the picture was not the best evidence and was irrevelant and immaterial. On appeal, Collett contends that admission of the photograph was highly prejudicial.

Admission of photographs into evidence is within the sound discretion of the trial court, and the trial court's action in admitting photographs will not be disturbed except for an abuse of that discretion. *Hubble* v. *State* (1972), 260 Ind. 655, 299 N.E.2d 612. It is well

5. We would point out that neither Collect nor the State established that Officer Shinneman had knowledge of Collect's criminal history *prior* to the investigative stop and pat-down search which revealed the revolver. Since it was not established that Officer Shinneman knew of Collect's propensity for crimes of violence prior to the pat-down search, we could not consider this factor as a further justification for the pat-down search discussed in Issue One.

settled that a witness' testimony may be supplemented by photographs. *Cooper* v. *State* (1974), 261 Ind. 659, 309 N.E. 2d 807. The arrest picture of Collett was properly admitted into evidence to supplement Officer Shinneman's testimony that Collett's appearance had changed in the interval between his arrest and trial. The admission of the photograph was proper to prove beyond a reasonable doubt that the defendant present at trial was the same person arrested for the offense. *Cf. Saffold* v. *State* (1974), 162 Ind. App. 6, 317 N.E.2d 814. Moreover, Collett has failed to show specifically how he was harmed by the admission of the photograph into evidence.[6]

The judgment of the trial court should be and the same hereby is affirmed.

Hoffman, J. and Garrard, J., concur.

NOTE.—Reported at 338 N.E.2d 286.

---

6. Collect makes no allegation that the photograph was prejudicial because it was a "mug shot" and led the jury to believe that Collect had a prior criminal record. *See Saffold* v. *State* (1974), 162 Ind. App. 6, 317 N.E.2d 814.