JEROME CLARK *v*. STATE OF INDIANA.

[No. 3-975A205. Filed January 13, 1977. Rehearing denied February 16, 1977. Transfer denied July 20, 1977.]

*Robert S. Bechert,* Deputy Public Defender, of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

HOFFMAN, J. — Defendant-appellant Jerome Clark was charged by information with unlawfully possessing a controlled substance, to-wit: heroin. Trial to the court resulted in a finding of guilty, and Clark was sentenced to the custody of the Department of Correction for a determinate period of two years. He subsequently filed a motion to correct errors which was overruled by the trial court, and perfected this appeal.

The sole issue to be decided is whether the trial court erroneously overruled Clark's in-trial motion to suppress the

heroin, which was seized from Clark's person during a search incident to arrest.

The evidence in the record before us most favorable to the trial court's ruling on the motion to suppress reveals that on June 26, 1974, Fort Wayne Police Officers Hoover and Gonzales were on routine patrol in downtown Fort Wayne. At approximately 4:00 P.M., the officers received a radio dispatch stating that a security guard at St. Joseph's Hospital had observed "two suspicious subjects" leaving the hospital premises in a black Cadillac bearing a 1974 Indiana license number 2D 9700; that "[t]hey were black", and that one of them was armed with a handgun concealed in a brown handbag. Approximately five minutes later, the officers observed the above described automobile and occupants traveling north on Harrison Street. The Cadillac stopped in response to the officer's signal, whereupon the officers asked both the driver and appellant to get out of the automobile and place their hands on the trunk. Officer Gonzales then conducted a brief search of the automobile's interior but failed to discover either a brown handbag or a gun. At approximately this time, Officers Armstrong and Pyne arrived at the scene.

The officers asked Clark and his companion to step up under an awning because it had started to rain. Officer Hoover then asked the pair for identification, and simultaneously radioed headquarters to ascertain whether any warrants were outstanding for either subject. The officers at the scene were advised that an arrest warrant was outstanding for Clark as a result of his failure to appear for a court appearance on a traffic violation. Because Clark would have to be taken into custody pursuant to the outstanding arrest warrant, Officer Armstrong thoroughly searched his person and discovered an amber colored vial containing what later proved to be heroin.

Clark contends that the vial and heroin should have been suppressed for two reasons. First, he contends that the initial stop of the vehicle was illegal. He bases this contention on

alleged infirmities of the police dispatch, to-wit: "the complete absence of any physical description of the occupants of the vehicle, and the fact that the information was received from a source whose credibility and reliability were not established, * * *." Secondly, he contends that if the initial stop were lawful "[t]he intensity and scope of the police officers' action made this detention unreasonable, and, therefore, unlawful under the Fourth Amendment."

Clark's contention that the initial vehicle stop was illegal is without merit. Upon direct examination Officer Hoover testified that he had a chance to observe two black people in an automobile fitting the description and that this corresponded "exactly" with the dispatch he had received. Officers Hoover and Gonzales were supplied with the color, make and license number of the vehicle containing two black subjects, one of whom was reported carrying a concealed weapon. Approximately five minutes after receiving the dispatch, the officers observed the described vehicle and detained it for investigation. When the exactness of the vehicle's description is coupled with the timeliness of the officers' observation, the fact that the officers did not have the benefit of an exact physical description of the occupants is inconsequential. *See, Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738.

Although Clark asserts that the information was received from a source where credibility and reliability were not established, when acting upon information received in a radio dispatch, a police officer is not required to ascertain the reliability and credibility of the initial source of the information. Moreover he must of necessity rely upon the communication system of the police headquarters where, as here, the use of an automobile compels officers to act with greater speed and less hesitancy. *Manson, et al.* v. *State* (1967), 249 Ind. 53, 229 N.E.2d 801, *cert. denied,* 390 U.S. 995, 88 S.Ct. 1198, 20 L.Ed.2d 95. The reasonableness

of an investigatory stop based upon information received in a radio dispatch must therefore be measured against the objective standard prescribed in *Terry* v. *Ohio* (1968), 392 U.S. 1, at 21-22, 88 S.Ct. 1868, at 1880, 20 L.Ed.2d 889, where the court stated:

> "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"

Viewing the actions of the officers in light of the above standard and in the context of the case at bar, we are not persuaded by Clark's argument that the initial stop was illegal.

Unlike the situation in *Jackson* v. *State* (1973), 157 Ind. App. 662, 301 N.E.2d 370, where police officers received a "tip" from an unknown informant and made an arrest in a tavern parking lot, the case at bar involved a reliable police dispatch derived from the report of a hospital security guard that one of two suspicious characters was carrying a concealed weapon which in the absence of a license would constitute not only unusual conduct but an observed crime. The stop herein was imbued with a concern for the speedy investigation of suspects using an automobile on public streets, potentially armed with a deadly weapon. Accordingly we determine that there was ample justification for experienced police officers to exercise a reasonable suspicion in detaining Clark pursuant to *Terry* v. *Ohio, supra. See, Williams, et al.* v. *State* (1974), 261 Ind. 547, 307 N.E.2d 457; *Collett* v. *State* (1975), 167 Ind. App. 185, 338 N.E.2d 286.

Having decided that the initial stop was lawful, we must determine whether the stop was related in scope to the circumstances which justified it in the first instance. Clark contends that when the police officers failed to find the gun or the brown handbag, their power to detain him ended.

The officers' power to investigate was not extinguished by the fact that Officer Gonzales' cursory examination of the

front seat area of the automobile failed to reveal either the gun or the handbag. Where, as here, police action is predicated upon a belief that a subject is unlawfully armed, common sense demands that any potential threat of violence be neutralized before any further investigative action is undertaken. Once the potential threat to the officers in the instant case was neutralized, they were authorized, pursuant to IC 1971, 35-3-1-1 (Burns Code Ed.),[1] to make reasonable inquiries concerning the identification of Clark and his companion. *See, Luckett v. State, supra.*

Officer Hoover's radio call to headquarters to check on any outstanding warrants was within this reasonable scope of the investigation. Moreover it was upon discovering that a warrant was outstanding for Clark's arrest that he was actually taken into custody. Thus in the context of an arrest based on an outstanding warrant there is no question concerning the unqualified authority of the arresting agent to search the person of the arrestee. *See, Sizemore v. State* (1974), 159 Ind. App. 549, 308 N.E.2d 400 (transfer denied), *cert. denied,* 420 U.S. 909, 95 95 S.Ct. 827, 42 L.Ed.2d 838, quoting from *United States v. Robinson* (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427. Only after an appropriate search incident to the lawful arrest was the vial of heroin found.

We therefore conclude that the scope of the detention was reasonably related to the precipitating circumstances, and that Clark's motion to suppress was properly overruled.

---

1. "When a law enforcement officer in a distinctive uniform, or in plain clothes after having identified himself as a law enforcement officer reasonably infers, from the observation of unusual conduct under the circumstances and in light of his experience, that criminal activity has been, is being, or is about to be committed by any person, *observed in a public place said officer may stop such person for a reasonable period of time and may make reasonable inquiries concerning the name and address of such person and an explanation of his action.* Said stopping and inquiry shall be limited to those matters under the enforcement jurisdiction of the particular officer and when conducted within the limits specified herein shall not constitute official custody or arrest and shall not constitute grounds for civil liability for false arrest or false imprisonment." (Emphasis added.)

The judgment of the trial court must be affirmed.

Affirmed.

Garrard, J., concurs; Staton, P.J., dissents with opinion.

## DISSENTING OPINION

STATON, P.J.—I dissent from the majority opinion, since it creates a new "standard" of probable cause for electronic communications. This new "standard" is no standard at all. Its credentials are limited to its form and mode of transmission. If accepted, it makes searches easy. If accepted, it makes a meaningful probable cause standard unnecessary. I can not accept it; therefore, I would reverse the trial court's judgment with instructions to grant a new trial and to sustain the motion to suppress.

## I.

### Probable Cause

A security guard from the Saint Joseph Hospital reported that he had observed two suspicious men with a handgun concealed in a brown handbag. This report was electronically transmitted by the dispatcher. After receiving the transmitted report over their police car radio, two police officers observed the car described in the transmission and stopped it. In their search, they found no brown handbag and no handgun. After their search, they asked the occupants of the car for identification and checked for outstanding warrants. One of the occupants, Clark, was arrested on an outstanding bench warrant for a vehicle inspection sticker violation. A search of his person by the police officers revealed the possession of a controlled substance.

The test for determining whether probable cause exists is set forth in *Walker* v. *State* (1973), 155 Ind. App. 404, 293 N.E.2d 35, 41:

"The test for probable cause to make an arrest is whether at the time of the arrest the facts and circumstances within

the knowledge of the officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man of reasonable caution in believing that the arrestee *had committed or was committing an offense.*" (My emphasis.) *Smith* v. *State* (1971), 256 Ind. 603, 271 N.E.2d 133.

The arresting officers had absolutely no information from the transmission or from any other source that the men in the car had committed or were about to commit an offense. The only information they had was that the two men in the car were suspicious looking in the judgment of a hosiptal security guard and that they might be in possession of a brown handbag which concealed a handgun. The officers did not know whether the men in the car had a license to carry a handgun. Therefore, the two men were stopped by the police because, in the judgment of a security guard at the hospital, they looked suspicious.

In *Paxton* v. *State*, (1970), 255 Ind. 264, 275, 263 N.E.2d 636, 642 Justice Hunter observed:

"Appellee, in attempting to establish that the police officers had probable cause to conduct the search point out that appellant Atherton and Silcox were 'suspicious persons' known to both Bishop and Hutchison. We find this argument to be blatantly offensive. It will be a sad day indeed when this court sanctions the detention and search of persons and their property on the mere allegation that they are of suspicious character."

Clark was not known by either police officer. Their actions were based solely upon the electronic transmission from the dispatcher.

In *Jackson* v. *State* (1973), 157 Ind. App. 662, 301 N.E.2d 370, 371, a similar factual posture to Clark's search is found. In *Jackson*, Judge Hoffman wrote:

". . . [Police] received from an unknown source information to the effect that Fred D. Jackson 'was carrying a gun.' A police officer, without obtaining a warrant . . . found Jackson sitting behind the steering wheel of an automobile . . . in [a] parking lot . . . and requested Jackson to

step out of the automobile. When Jackson complied, the officers 'observed the butt of a pistol sticking out of his pocket.' Thereupon, the defendant was asked if he had a permit to carry the weapon. Upon stating that he did not, the gun was confiscated and Jackson was placed under arrest. . . .

\* \* \*

"It has . . . been held that a police officer who has reason to believe that he is dealing with an armed and presently dangerous individual may make a reasonable search for weapons although he may lack probable cause for arrest. . . . However, such a search *must be based upon more than a mere 'hunch' or suspicion.* . . . A police officer must be able to point to definite facts from which *he could reasonably infer that the individual he is confronting is armed and dangerous.* . . .

"A 'tip' from an unknown informer of unknown reliability *may create, at most, mere suspicion.* We therefore find that the officers were not justified in their 'seizure' of Jackson absent anything whatsoever to corroborate the information which they received.

"Evidence obtained through unreasonable searches and seizures is not admissible." (Citations omitted.) (My emphasis).

The police found a handgun in Jackson's belt. Jackson did not have a permit.

When Clark was stopped by the police, their search did not bear the fruit of a handgun or a brown handbag as described in the electronic transmission. Yet, the search was extended and Clark was detained until a further investigation could be conducted without probable cause.

## II.

### *"Unusual Conduct"*

The majority's reliance upon the statute, IC 1971, 35-3-1-1 (Burns Code Ed.), to justify the search is misplaced. The statute mandates that the observation of the "unusual conduct" be made by the police officer who conducts the search

and not by a private security guard whose experience and training may be considerably more limited. The statute does not cover unobservable electronic transmissions. If the transmitter does not have probable cause to arrest, probable cause can not be created by merely sending an electronic transmission of someone's suspicions, which is all that has been done in Clark's case.[1]

The statute provides: ". . . observation [by the officer] of *unusual conduct* under the circumstances and in light of his experience, that *criminal activity* has been, is being, or *is about to be committed. . . .*" (My emphasis). The security guard had only suspicions. He knew of no criminal activity being planned or about to be committed.

The obvious inherent danger with the majority's interpretation of the statute is that any reported observation, (trained or untrained; experienced or inexperienced; civilian, private security guard, or other similarly situated persons with some color of authority) could initiate an arrest or search of another person by merely telephoning their suspicions to the local police station or the police dispatcher. The judgment of the experienced and trained police officer required by the statute would no longer be needed.

When Clark was stopped by the officers, one officer testified:

"Q. Did you note anything unusual about the conduct of the defendant prior to your searching him?

"A. No, he seemed to be fairly well composed. We got along rather well I thought.

\* \* \*

"Q. Had the defendant committed any traffic violation?

"A. No, sir. Other than going a block and a half in front of a squad car with red lights and siren and not pulling over at the earliest opportunity."

---

1. By *transmitter*, the writer includes all authorized law enforcement officers who send information to a dispatcher for transmission.

## III.

### *Conclusion*

The pretext for the search of Clark's person and car was a mere suspicion, not probable cause. The electronic transmission received by the officers over their car radio did not cause a factual mutation from suspicion to probable cause. The facts transmitted were merely someone's suspicions about the conduct of another and nothing more. The law requires that the facts constitute probable cause to search. Less than probable cause would create easy searches.[2] Less than probable cause would create illegal searches. Mere suspicion is not a substitute for probable cause. I would reverse the trial court's judgment with instructions to grant a new trial and to sustain the motion to suppress.[3]

NOTE.—Reported at 358 N.E.2d 761.

---

2. The United States Supreme Court also had addressed the issue: "Under our system suspicion is not enough for an officer to lay hands on a citizen. . . . It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to *easy* arrest." (My emphasis). *Henry* v. *United States* (1959), 361 U.S. 98, 104; 80 S.Ct. 168, 172; 4 L.Ed.2d 134, 139.

3. *Thomas Leroy Madison* v. *State of Indiana* (1976), 171 Ind. App. 492, 357 N.E.2d 911. Judge Lybrook recognized two standards for an investigatory stop:

". . . IC 1971, 35-3-1-1 (Burns Code Ed. authorizes a stop for 'unusual conduct' whenever a police officer reasonably infers, from on-the-scene observations and in light of his experience, that criminal activity has been, is being, or is about to be committed. A separate standard applies when the investigatory stop is founded on information supplied by another person, rather than the officer's personal observation. . . .''

In *Madison* v. *State, supra,* the trial court's judgment was reversed for the reason that the court erred in overruling the motion to suppress.