Michael Bernard CASTLE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 3–1084A295.

Court of Appeals of Indiana,
Third District.

April 16, 1985.

John F. Surbeck, Jr., Deputy Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Michael Bernard Castle appeals the judgments entered against him for possession of marijuana, IND.CODE § 35–48–4–11, and carrying a handgun without a license, IND.CODE § 35–23–4.1–3. The action was tried before a jury.

The issues presented to this Court for review are as follows:

(1) whether the trial court erred in admitting into evidence items seized by police following a stop for violation of a traffic ordinance;

(2) whether the necessary chain of custody was proved by the State to justify the admission of three bags of marijuana; and

(3) whether the trial court erred in modifying its judgment to reflect a Class A misdemeanor.

On April 12, 1983, Officer Steve Holzworth of the Fort Wayne Police Department observed two men, suspected of armed robbery, traveling in a beige Cadillac, bearing Michigan license plates. Holzworth followed the vehicle, attracting the attention of the occupants. The driver made an illegal right turn and increased his speed slightly. Holzworth called for assistance and followed the vehicle approximately eight miles before bringing it to a stop. Holzworth requested identification from the driver, Alexander Sharp, and instructed the passenger, Castle, to keep his hands on

the dashboard of the vehicle. When Castle failed to do as instructed, Holzworth moved to the rear of the vehicle to await the arrival of additional officers.

Fort Wayne police officer, Gary Grant, testified that upon his arrival at the scene, he saw that Castle had his fingertips inside his jacket. Grant ordered Castle to put his hands in plain sight. The two were asked to get out of the vehicle and both were searched. The search of Castle revealed a .38 caliber, Charter Arms revolver and three bags of a substance later identified as marijuana. Sharp and Castle were arrested and taken into custody. The handgun and marijuana were taken by Officer Grant to the Fort Wayne police station, marked for identification purposes, and locked in the department's property room.

■ Castle asserts that the items taken from him at the scene were improperly admitted into evidence at his trial as they were obtained in an illegal search. Castle does not deny that Officer Holzworth had the right and duty to stop their vehicle after Sharp made an illegal turn. Indeed, police officers have a duty to stop and investigate when they perceive a situation which poses a possible traffic hazard to motor vehicle traffic. *Harts v. State* (1982), Ind.App., 441 N.E.2d 714. Police may stop a vehicle for erratic driving alone. *Johnson v. State* (1983), Ind.App., 450 N.E.2d 123.

■ Castle argues instead that violation of a traffic infraction does not give police probable cause to arrest or search the vehicle's occupants. It is true that not every investigative stop will justify an incidental search. *Collett v. State* (1975), 167 Ind.App. 185, 338 N.E.2d 286. It is clear, however, that once a vehicle has been stopped for investigative purposes, an officer may conduct a search for weapons, without first obtaining a search warrant, if the officer reasonably believes that he or others may be in danger. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

This Court in *Collett v. State, supra,* citing *Terry* states:

"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.... And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." (Citations omitted.) 167 Ind.App. at 193, 338 N.E.2d at 291.

■ Officer Holzworth testified at the hearing on Castle's motion to suppress, that he had been notified earlier in the day to watch for two men, suspected of armed robbery, driving a large vehicle, possibly a Cadillac or Lincoln Continental, with Michigan license plates. When Holzworth turned his vehicle to follow the vehicle matching the description given him earlier in the day, the driver made an illegal turn and sped up slightly. Holzworth testified at the suppression hearing that he believed the two were trying to "ditch" him. After the vehicle was stopped, Castle refused to keep his hands on the dashboard as instructed, and Officer Grant observed Castle's fingers inside his jacket "fumbling with something." The officers could reasonably have believed that Sharp and Castle were the suspects being sought for armed robbery and the actions of the two men, before and after the stop, reinforced that suspicion. The officers' subsequent search for weapons was fully warranted and the gun and marijuana discovered during the search were properly admitted at trial.

Castle argues the State failed to prove the chain of custody required for admission of the marijuana at trial. Officer Grant testified that he searched Castle, finding two bags of a substance, later identified as marijuana, in Castle's sock and another in the pocket of his jacket. After Castle's arrest, Grant transported the marijuana to

the Fort Wayne police station, marked it for identification, and executed a "continuity slip" before locking it in a steel box for night deposit. Counsel for both the State and Castle stipulated at trial that property officer, Linda Johnson, removed the marijuana from the locked evidence box and delivered it personally to Marge Kimball, the police department chemist. Kimball testified at trial that she then weighed the contents of the three bags, extracted a small portion for testing, and concluded that the substance tested was marijuana. It is stipulated that Kimball delivered the contents, after testing, to Officer Johnson, who returned it to the locked evidence vault. On the day of trial, the marijuana was taken from the property room and delivered to Kimball by Detective Sergeant Gerald Wilson, head of the narcotics division.

Castle suggests the State failed to prove the whereabouts of the marijuana from April 1983 to April 1984, when Detective Wilson assumed command of the narcotics division, replacing Linda Johnson. The parties, however, stipulate that Johnson locked the marijuana in the evidence vault following the testing by Kimball in April 1983 and was responsible for it until Wilson assumed the position in April 1984. On the day of trial, Wilson located the marijuana in the property room by use of an evidentiary indexing system and delivered it to Kimball, sealed and bearing her initials.

In Indiana, an exhibit is admissible at trial if the evidence regarding its chain of custody strongly suggests the exact whereabouts of the evidence at all times prior to trial. *Rinard v. State* (1976), 265 Ind. 56, 351 N.E.2d 20. The State need not exclude all possibilities of tampering, but need only provide a reasonable assurance that the exhibit passed through the various hands in an undisturbed condition. *Rinard, supra.* The evidence presented herein strongly suggests that the marijuana taken from Castle was locked in the department's evidence vault after testing and remained there until the day of trial. No evidence was presented

indicating that the evidence had been tampered with. Castle may not assert an inadequate chain of custody merely because of personnel changes made in the police property department prior to trial. The marijuana was properly admitted.

The final issue presented by Castle for review is whether the trial judge erred in amending his judgment rendered upon the jury's verdict. The jury found Castle guilty of possession of marijuana, a Class D felony, pursuant to IND.CODE § 35–48–4–11. That statute, in pertinent part, appears as follows:

"Sec. 11. A person who:

(1) knowingly or intentionally possesses marijuana, ...

commits possession of marijuana, ... a Class A misdemeanor. However, the offense is a Class D felony (i) if the amount involved is more than thirty (30) grams of marijuana ...[.]"

In his motion to correct errors, Castle argued that the State failed to present evidence as to the amount of marijuana seized from him. The trial judge granted Castle's motion, in part, entered the judgment as a Class A misdemeanor and sentenced Castle accordingly.

Before deliberating on the charge of possession, the jury was instructed as follows:

"The crime of possession of marijuana is defined by statute in part as follows:

'A person who knowingly or intentionally possesses marijuana, commits possession of marijuana. The offense is a Class D felony if the amount involved is more than thirty (30) grams of marijuana.'

To convict the defendant the State must have proved each of the following elements:

The defendant

1. knowingly or intentionally

2. possessed marijuana.

If the State failed to prove each of these elements beyond a reasonable

doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of possession of marijuana.

If the State further proved beyond a reasonable doubt the amount involved was more than thirty (30) grams of marijuana, you should find the defendant guilty of possession of marijuana, a Class D felony." (Instruction No. 3)

The State failed to present evidence as to the weight of the marijuana seized from Castle and therefore may not avail itself of the aggravated, Class D felony offense. The jury could not properly find Castle guilty of a Class D felony. In accordance with the instruction given at trial, the jury, however, was required to establish guilt of the Class A misdemeanor offense before returning a verdict on the Class D felony. By its verdict, the jury, therefore, did establish Castle's guilt of the primary offense before elevating the offense to a Class D felony. As guilt of the primary offense had been established by the jury, the trial judge did not err in amending his judgment to reflect conviction of the primary offense, a Class A misdemeanor.

Judgment affirmed.

Affirmed.

STATON, P.J., and GARRARD, J., concur.