# HUGHES ET AL. *v.* STATE OF INDIANA, EX REL. SUTTON.

[No. 7,651. Filed June 6, 1912.]

1. APPEAL.—*Briefs.—Statement of Evidence.—Defective Statement Cured by Appellee's Brief.*—Although a statement of the evidence in appellants' brief is an insufficient compliance with rule twenty-two to present any question on the evidence for review, the question is presented where such defective statement is remedied by appellee's brief. p. 619.

2. INTOXICATING LIQUORS.—*Unlawful Sales.—Action on Bond of Saloon-keeper.— Intoxication.— Evidence.— Sufficiency.—* In an action on the bond of a saloon-keeper brought under §8355 Burns 1908, §5323 R. S. 1881, for injury to plaintiff's means of support resulting from the unlawful sale of liquor to plaintiff's father, where the evidence showed that the sales of liquor were unlawful, that decedent, who, when not drinking, was a peaceful and lawabiding citizen, drank approximately sixteen glasses and one bottle of beer and four drinks of whisky between nine a. m. and three p. m. of the same day, that he became noisy and quarrelsome and attempted to strike others with a bottle of beer, for which he was put out of the saloon, that from the saloon he

went to a dancing platform and thence to a ball game, where he interfered in a fight and engaged in combat with the deputy marshal in which he was killed, the evidence sufficiently showed that decedent was so much intoxicated that he had lost control of himself and for that reason resisted the officer who killed him, so as to authorize a recovery by plaintiff.   p. 619.

3. INTOXICATING LIQUORS.—*Unlawful Sales.—Action on Bond of Saloon-keeper—Facts Essential to Recovery.—Proximate Cause.*— In an action on the bond of a saloon-keeper under §8355 Burns 1908, §5323 R. S. 1881, for injury to means of support resulting from intoxication produced by liquor unlawfully sold it is essential to a recovery by plaintiff that besides the sale or gift of liquor, intoxication from its use in whole or in part and a resulting injury to plaintiff's means of support must be shown, but it is not necessary to show that the sale of liquor was the proximate cause of the injury.   p. 622.

From Jefferson Circuit Court; *Hiram Francisco,* Judge.

Action by the State of Indiana on the relation of Luther Sutton against William Hughes and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*George S. Pleasants, Korbly & New,* for appellants.
*E. E. Winn, P. E. Bear* and *F. M. Griffith,* for appellee.

IBACH, J.—This was an action under §8355 Burns 1908, §5323 R. S. 1881, by relator Luther Sutton, a minor, on the bond of appellant Hughes, as a licensed saloon-keeper, to recover damages sustained by reason of his selling liquor unlawfully to Charles Sutton, father of relator. The substance of the charge in the complaint is that on July 4, 1906, appellant Hughes sold liquor to Charles Sutton when the latter was intoxicated, which Sutton drank, and from the effects of which he became more thoroughly intoxicated, irritable, uncontrollable and unable to distinguish right from wrong, and that while in said state of intoxication, and wholly by reason thereof, he attempted to resist the deputy marshal of the town of Patriot, Indiana, in making an arrest, and was shot and killed by said deputy marshal, and thus relator was deprived of his sole means of support. Relator recovered judgment for $1,800 on trial by jury.

The only alleged errors which appellants attempt to present are that the verdict is not sustained by sufficient evidence and is contrary to law. The statement of the evidence in appellants' brief is not full, omitting many matters, and consists largely of conclusions of counsel as to the effect of the evidence, rather than a condensed recital of the evidence itself. Appellants' brief would be, in this respect, insufficient to bring before us the questions sought to be presented, under rule twenty-two of the Supreme and Appellate courts, had not defects been remedied by appellee's brief.

Appellants urge that appellee must prove not only that Hughes sold liquor to decedent when he was intoxicated, and that he drank this liquor and became more intoxicated, but also that he was intoxicated to such an extent that he was wholly unable to reason and understand for himself at the time he resisted the deputy marshal, and that the deputy marshal shot him because he undertook to resist him in making an arrest, and for no other reason.

There was a Fourth of July celebration in progress in Patriot on the day Sutton was killed, and he, a citizen of Kentucky, had crossed the Ohio river and come to Patriot in the morning in order properly to celebrate the day. The evidence is uncontradicted that Hughes was doing a "land-office business" selling liquor in the back room of his saloon, that Sutton drank in that room many times with several different persons, and that Hughes sold to him liquor in the forenoon when he was intoxicated. There is also evidence that he sold him liquor in the afternoon, and about 3 o'clock put him out of the room, because he was noisy and quarrelsome, and was threatening to use a bottle of beer as a club over some of his companions' heads. The evidence, taken as a whole, tends to show that between 9 a. m. and 3 p. m. he drank approximately fifteen or sixteen glasses and one bottle of beer, and four drinks of whisky,

and that his drinking continued up to within thirty minutes
of the shooting. After leaving the saloon Sutton went to a
dancing platform and danced awhile, some of the witnesses
stating that he was drunk at this time, while others insisted
that he was not drunk or he could not have danced, and then
we find the startling statement of one witness that all the
men who were dancing were "full". There appears to have
been some disagreement and misapprehension in the minds
of the witnesses as to the meaning of the words "drunk"
and "intoxicated." Practically all of them state that Sut-
ton was under the influence of liquor, but many of them
hesitate to say that he was "drunk" or "intoxicated," and
some of them explain what they understand by "drunk" in
such a manner that the inference is they did not consider
a man "drunk" until he had lost the power of locomotion,
and had laid himself down to rest in some convenient gutter.
After leaving the dancing platform, Sutton went to watch a
ball game near by. Shortly after, between 3:30 and 4
o'clock, Joe Taylor, another Kentuckian, who had partaken
too freely of unlawfully sold liquor, became engaged in a
fight, and was arrested by the officers. The ball game was
stopped, the crowd surrounded them, some favoring the offi-
cers, others calling out, "Don't let them take Joe Taylor."
The officers drew their revolvers, and ordered the crowd
back, and they all stood back except Sutton and perhaps one
other. Sutton rushed in and engaged in combat with the
deputy marshal, who shot him, as he says, in self-defense.
It was shown by the testimony of at least eight witnesses
that Sutton, when not drinking, was a peaceful, law-abid-
ing citizen, and this testimony was not contradicted. Ap-
pellant Hughes testifies that he knew that every sale of
liquor he made that day was in violation of law, and that
his bondsmen would be liable for injuries caused thereby,
yet he "took the chances".

The defense attempted to show the existence of ill-feeling
between Sutton and the deputy marshal Smith, who shot

him, and one witness testified that some fourteen years before Sutton testified against Smith at a trial when the latter had been arrested for a "cutting scrape", and Smith had said he would get even, and that at one time Smith and Sutton had been "mixed up on different sides" in a quarrel over a dog, which had taken place in an alley in Patriot. This evidence, even if it were not directly contradicted, would be insufficient to overthrow the verdict, in the face of the other evidence. Furthermore, the credibility of the witness who thus testified was attacked, and Smith himself testified that there had been no ill feeling at any time between himself and Sutton, that nothing had ever happened at all that caused any ill feeling between them, and that he shot him solely in self-defense.

Smith testified that he had been warned before the Fourth that some Kentuckians had been talking for two weeks that if the officers undertook to arrest any one from Kentucky they would put the officers in the river. However, it was shown that the persons concerned in this lived in an entirely different neighborhood from Sutton, and it was not shown that he had any communication with them, or any connection with their alleged plot. There remains the testimony of one witness, however, who said that Sutton told him before he crossed the river the morning of the Fourth, that if the officers attempted to arrest any Kentucky boys he would put them in the river. The testimony of this witness is not consistent on its face, and counsel for plaintiff at the trial argued that it was unreasonable, untrue and manufactured, and the jury in weighing his testimony may well have rejected it wholly.

The evidence, a portion of which has been related, is sufficient for the jury to find that Sutton at the time he was shot was so much intoxicated that he had lost control of himself, and for that reason, and no other, resisted the officer.

The Standard Dictionary defines "intoxicated" as

"drunk", and "drunk" as "Under the influence of intoxicating liquor to such an extent as to have lost the normal control of one's bodily and mental faculties, and, commonly, to evince a disposition to violence, quarrelsomeness, and bestiality." It is apparent from the testimony of those very witnesses who did not consider Sutton drunk because he was still able to walk and dance, that he was under the influence of liquor to such an extent as to have lost control of himself in certain ways, and to have become quarrelsome, and to show that he was intoxicated within the meaning of the above definition.

We think the evidence sufficient to show that the sales of liquor to Sutton by Hughes were the proximate cause
3. of his death. See *Currier* v. *McKee* (1904), 99 Me. 364, 59 Atl. 442, 3 Ann. Cas. 57 and note.

However, this is not necessary under our decisions. "Under the act it is necessary that two facts should concur besides the sale or gift of the liquor by the defendant to constitute a cause of action, to wit, intoxication resulting from its use in whole or in part, and the loss of the means of support by the plaintiff in consequence of such intoxication. The statute requires nothing more.  *  *  *  The statute makes no distinction whether the loss of the means of support is the direct or remote result of the intoxication. It only requires that it should be established that the loss of the means of support is the result of such intoxication.  *  *  *  The statute provides for a recovery by action for injuries to person or property or means of support, without any restriction whatever, and  *  *  *  both direct and consequential injuries were included;  *  *  *  it is evident that the legislature intended to go, in such a case, far beyond anything known to the common law, and to provide a remedy for injuries occasioned by one who was instrumental in the producing or who caused such intoxication.  *  *  *  The question was not whether the death of the deceased was the natural, reasonable, or probable conse-

quence of the defendant's act; but it was enough if intoxication, caused in whole or in part by liquor sold by the defendant, was the cause of the death of the plaintiff's husband, if by reason thereof the plaintiff's means of support were injuriously affected." *Homire* v. *Halfman* (1901), 156 Ind. 470, 60 N. E. 154. See, also, *McCarty* v. *State, ex rel.* (1904), 162 Ind. 218, 70 N. E. 131; *State, ex rel.,* v. *Terheide* (1906), 166 Ind. 689, 78 N. E. 195; *Dudley* v. *State, ex rel.* (1907), 40 Ind. App. 74, 81 N. E. 89; *Berkemeier* v. *State, ex rel.* (1909), 44 Ind. App. 1, 88 N. E. 634; *Greener* v. *Niehaus* (1909), 44 Ind. App. 674, 89 N. E. 377; *United States Fidelity, etc., Co.* v. *State, ex rel.* (1910), 46 Ind. App. 373, 92 N. E. 691; *State, ex rel.,* v. *Dudley* (1910), 45 Ind. App. 674, 91 N. E. 605; §8355 Burns 1908, §5323 R. S. 1881.

Generally speaking, men, if left to their own choice, would rather obey the law than to violate it. From all the evidence produced at the trial of the cause in the court below, we are fully supported in holding that the conditions shown to exist at Patriot on that eventful Fourth of July were not an expression of the true life and character of that community, but that such conditions were rather the result of the unlawful sales of intoxicating liquor, as charged in the complaint, for which appellants must respond in damages to appellee.

The evidence is sufficient to support the verdict, and the judgment is affirmed.

NOTE.—Reported in 98 N. E. 839. See, also, under (2) 23 Cyc. 324, 326; (3) 23 Cyc. 314, 326.