THOMAS LEROY MADISON *v.* STATE OF INDIANA.

[No. 1-276A20. Filed December 16, 1976.]

*William W. Gooden,* of Mt. Vernon, for appellant.

*Theodore L. Sendak,* Attorney General, *Charles M. Russell,* Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant Thomas Leroy Madison was tried by court and convicted of Possession of a Controlled Substance and Possession of an Instrument or Contrivance Used in Smoking a Controlled Substance.[1] Upon conviction, Madison was given a suspended sentence and placed on probation for six (6) months.

---

1. IC 1971, 35-24.1-4-1, Ind. Ann. Stat. § 10-3561 (Burns Supp. 1974).

We reverse for the reason that the trial judge erred in overruling defendant's motion to suppress evidence.

The following evidence was presented at the hearing on the motion to suppress. On Sunday morning, September 1, 1974, Vincennes police officers Edward Lemons and Terry Mooney were on routine patrol in Kimmel Park. Officer Lemons testified that at approximately 9:02 A.M. he observed Madison on the driver's side and a passenger in a parked vehicle. The automobile was parked near a picnic area. The officers decided to check the parked vehicle because Madison's head "was laying on the window" and they "didn't know if someone was hurt or sick or what." On cross-examination, Officer Lemons stated that Madison appeared to be asleep, that it was not unusual for cars to be parked there, and that he did not think a crime was about to be committed.

Officer Mooney testified that, although he could not see the occupants, he recognized the vehicle as Madison's car and told his partner that it would probably be a good car to check. Officer Mooney further testified that he had heard "a lot of things" about Madison but "nothing concrete" and that they decided to check the car mainly because ". . . his head was down and everything. Like he might either be asleep or passed out or something like that."

When Officer Mooney asked if everything was alright, Madison replied that he was okay, that he had been out all night, and that "they'd closed up the Pier." Mooney indicated that Madison "acted like he was kinda groggy . . . half asleep." Thereupon, Officer Mooney asked for his identification and Madison got out of the car. During the ensuing conversation, Mooney noticed a belt buckle which appeared to be a hash pipe. Mooney examined it and determined, through his experience and training, that it had probably been used to smoke marijuana.

Officer Mooney then bent down, looked through the rolled down window on the driver's side and saw three cellophane

bags, one under the visor in front of the driver's side and two under the visor on the passenger's side. Based on his prior experience and training, he thought the bags contained marijuana. Officer Mooney retrieved the bags and then advised Madison that he was under arrest.

We agree with Madison's contention that the circumstances did not warrant any investigation beyond an inquiry into his well-being. The evidence subsequently seized was the fruit of an unlawful investigatory stop and therefore is not admissible at trial.

The constitutionality of an investigatory stop depends solely upon the reasonableness of the action taken by the police. Probable cause to make an arrest is not required. *Williams* v. *State* (1974), 261 Ind. 547, 307 N.E.2d 457; *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738.

In Indiana there are two standards for measuring the reasonableness of an investigatory stop. *Landrum* v. *State* (1975), 167 Ind. App. 304, 338 N.E.2d 666. IC 1971, 35-3-1-1 (Burns Code Ed.) authorizes a stop for "unusual conduct" whenever a police officer reasonably infers, from on-the-scene observations and in light of his experience, that criminal activity has been, is being, or is about to be committed. A separate standard applies when the investigatory stop is founded on information supplied by another person, rather than the officer's personal observation. The facts known to the officer at the time he stopped the car must be sufficient to warrant a man of reasonable caution in the belief that the investigation was appropriate. *Luckett, supra.*

In the case at bar, the reasonableness of the investigatory stop must be considered with reference to two points in time. First, were the police officers justified in approaching the car initially? Second, did the circumstances warrant a check for identification?

When the officers first observed the automobile, they had no basis for inferring that there was any criminal activity afoot. Officer Mooney's testimony that he had heard "a lot of things" about Madison but "nothing concrete" falls far short of the requirement of reliability for such hearsay information. See, *Adams* v. *Williams* (1972), 407 U.S. 143. There is likewise nothing inherently suspicious about a car parked near the picnic area of a public park on a Sunday morning. Officer Lemons testified to this effect and both officers acknowledged that the reason they decided to check the car was their concern for the well-being of the occupants.

We certainly cannot fault the officers for approaching the parked car to see if everything was alright. However, once Madison replied that he was okay, the basis for the initial inquiry was satisfied and no further investigation was warranted.

Law enforcement officers must be able to point to "specific and articulable facts" which reasonably warrant the given intrusion upon an individual's right of privacy. *Terry* v. *Ohio* (1968), 392 U.S. 1, 21. In the case at bar, the only testimony offered was that Madison appeared "half asleep" and "groggy." Such meager facts do not support a rational inference of criminal activity and we therefore conclude that Madison's subsequent detention was unlawful. To hold otherwise would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches.

We reject the State's argument, which relies on *Paxton* v. *State* (1975), 255 Ind. 264, 263 N.E.2d 636, that this is a valid search incident to an arrest. In *Paxton* the initial detention was founded on probable cause to arrest the driver for reckless driving. The instant case involves an entirely different factual setting. Since there was no traffic violation, probable cause for Madison's arrest did not exist until, after the

request for identification, he exited from the car and Officer Mooney discovered the hash pipe.

The propriety of stopping an automobile on the highway and asking the driver for identification was considered by the Supreme Court in *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738 and *Williams* v. *State* (1974), 261 Ind. 547, 307 N.E.2d 457. In both cases the police action was in response to a radio dispatch regarding a crime that had already been committed and the vehicle stopped on the highway corresponded with the description given in the communique. Justice Hunter stated in *Luckett*, 284 N.E.2d at 742: ". . . in cases involving the apprehension of suspected felons fleeing the scene of the crime in an automobile, we find nothing unreasonable in permitting the investigating officer to request that an operator's license be produced by the driver of a vehicle." The need for immediate police action is indeed readily apparent when a serious crime has been committed and a *moving* vehicle may reasonably be calculated to contain suspects fleeing from the crime. Because such exigent circumstances were not present in the case at bar, analogy to *Luckett* and *Williams* is clearly inappropriate.

Our result is supported by two Indiana cases. *Collett* v. *State* (1975), 167 Ind. App. 185, 338 N.E.2d 286, upheld a pat down search of the defendant for weapons after the automobile was initially stopped on the suspicion that the driver was intoxicated. The police officers had observed the defendant driving erratically and in excess of the speed limit. When, after the initial stop, one of the officers determined that the defendant was not intoxicated, but noticed rust rings around the license plate, further investigation by way of a car registration check was necessary to determine whether the car or license plate had been stolen. Judge Staton's step-by-step analysis is instructive. Once the officers had determined that the defendant was not intoxicated, it was then necessary to justify defendant's subsequent detention

for the purpose of checking the car registration. As basis for the further investigation, Judge Staton relied upon the rust rings as an indication that the previous bolts had been removed.

Although *Sayne* v. *State* (1972), 258 Ind. 97, 279 N.E.2d 196, involved the search of a vehicle which was stopped initially for a traffic violation (headlight not functioning), the reasoning is applicable to the facts presented here. The Supreme Court held that the search of the car for weapons was not justified by the meager facts presented. One police officer testified that he had heard that defendant had a criminal record although he did not know the details. The only other reason asserted for the search was that the defendant made a simple arm movement. The court quoted Justice Hunter in *Paxton, supra:* "It will be a sad day indeed when this court sanctions the detention and search of persons and their property on the mere allegation that they are of suspicious character."

Our decision today is based on the facts of the case before us. It is not meant to discourage legitimate and restrained police investigation undertaken on the basis of ample factual justification. We merely hold that this police detention, beyond the initial inquiry into Madison's well-being, was not justified by testimony that Madison appeared half-asleep and groggy, when there were no other grounds for suspecting the existence of criminal activity.

Accordingly, we find that the trial court erred in overruling Madison's motion to suppress. The judgment is therefore reversed.

Reversed.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 357 N.E.2d 911.