MARTIN GLENN IRWIN, JR. *v.* STATE OF INDIANA

[No. 1-977A209. Filed December 29, 1978.]

*Robert J. Brown*, of North Vernon, for appellant.

*Theodore L. Sendak*, Attorney General of Indiana, *Robert J. Black*, Deputy Attorney General, for appellee.

LYBROOK, P.J. — Appellant-defendant Martin Glenn Irwin, Jr., appeals his conviction for possession of less than 30 grams of marijuana, raising these issues for review:

(1)  Whether the trial court erred in overruling his pretrial motion to suppress evidence which he alleges was illegally obtained.

(2)  Whether the trial court erred in determining that the State had adequately demonstrated a proper chain of possession for the marijuana.

We reverse because the trial judge erred in admitting certain objects into evidence.[1]

On April 23, 1976, Dennis Wright, a Brownstown deputy marshall who had held that position for 23 days and whose only other law enforcement experience was one month spent as a part-time deputy marshall, was on special assignment with the Jackson County Sheriff's Department. He accompanied a Jackson County deputy to a spot near Medora in Jackson County on the road known as "old U.S. 50." They had been instructed to set up a roadblock on old U.S. 50 in front of the Carr Township Conservation Club to conduct a routine traffic check of the driver's licenses, registrations, and safety inspection stickers of all drivers reaching the roadblock during a two-hour period beginning at 9 p.m.

The two officers arrived at the site of the planned roadblock before the designated time for its inception. Wright testified that they parked their patrol car in an inconspicuous place at the back of the Conservation Club parking lot to await the designated time to begin their assignment. They were parked approximately one-eighth mile from the driveway into the Conservation Club, a private driveway commonly used by the public as a turnaround.

---

1.  Our task was not made easier by appellant's failure to comply with Ind. Rules of Appellate Procedure, Appellate Rule 7.2(A)(3) which requires notations in the margins of each page of the trial transcript indicating the contents of that page. Moreover, appellant improperly used the margins to emphasize with editorial comments those points of the transcript relevant to his arguments to this court. This practice should not be repeated. We have ignored these comments in our perusal of the record other than to note their presence and general tenor.

Sometime before 9 p.m., the officers observed defendant's car driving in a direction away from Medora. It pulled into the driveway of the Conservation Club and began to execute a turn that appeared to be designed to allow it to go back out onto the highway in the direction of Medora. Wright testified that their observations revealed no violation of traffic laws and no evidence of any criminal activity whatsoever.[2]

The deputy suggested that they begin their traffic check before its designated starting time and away from its designated location by approaching defendant's car in the driveway, halting its turning maneuver, and checking the defendant's license and registration.

The two officers intercepted defendant's car and Wright got out and approached the driver's side. Irwin was alone in his car. Wright shined his flashlight through the open window and asked to see Irwin's driver's license. Irwin produced his license. Wright noticed the odor of an alcoholic beverage and could see a brown prescription bottle in the center console between the two front seats. He testified that the bottle appeared to contain plant material.

Wright then asked for Irwin's registration. Irwin leaned to his right across the center console and reached with his left hand into the glove compartment. In the process, he was covering the console with his right arm. Irwin handed the registration to Wright. Wright then asked Irwin if he had been drinking beer and he replied that he had.

Wright next asked Irwin to get out of the car and he did. Wright shined his flashlight through the open door into the car and observed an overturned beer bottle on the floorboard in front of the driver's seat. Wright then leaned through the open door into the car to pick up the beer bottle and found, under the front part of the driver's seat, two plastic bags containing what later tests showed to be marijuana. Wright removed the beer bottle, the two plastic bags, and the prescription bottle from the car.

---

2. Testimony of Wright at the hearing on the motion to suppress:
"Q. From your vantage point and from the distance away that you were in the dark, what did he do wrong? What did you observe? A. I can't say that the defendant did anything wrong." At trial: "A. From our view, we didn't have any view of anything that was a violation of any type at that time, no."

Wright asked Irwin to place his hands on the hood of the car, searched him for weapons, handcuffed him, and told him he was under arrest for public intoxication.

The officers radioed for a vehicle to transport Irwin to jail, inventoried the contents of Irwin's car, and had the car towed away. During the inventory, Wright found a pipe, two unopened bottles of beer, and a package of cigarette papers. Irwin was charged with possession of marijuana in excess of 30 grams.

Wright's initial encounter with Irwin — his interception and halting of Irwin's turning maneuver and his check of Irwin's driver's license and registration — cannot be classified as an "arrest" which Ind. Code 35-1-17-1 defines as "the taking of a·person into custody, that he may be held to answer for a public offense." Wright admits that he had observed nothing wrong with defendant's actions or his vehicle up to the time he approached the car and asked for Irwin's driver's license; therefore, there was no probable cause to arrest Irwin at that time.

Defendant argues that Wright could not halt his movement and question him without probable cause to suspect that criminal activity, at least a traffic violation, was afoot. The State argues that Wright's initial encounter with Irwin was justified by the fact that the police were preparing to institute a roadblock and merely decided to begin their assignment early. The State maintains that Wright's action does not even rise to the level of an investigatory stop.

Our Supreme Court, in *Luckett v. State* (1972), 259 Ind. 174, 284 N.E.2d 738, said that the action of police in stopping an automobile amounts to a detention of the person and, thus, in its technical sense, constitutes an arrest. It is not automatically unconstitutional to subject citizens to brief detention under circumstances where probable cause for formal arrest is lacking, the constitutionality of such detention depending solely on the reasonableness of the action taken by the officer. *Luckett, supra; Madison v. State* (1976), 171 Ind.App. 492, 357 N.E.2d 911.

In *Williams v. State* (1074), 261 Ind. 547, 307 N.E.2d 457, at 460, the Supreme Court said:

"Our society has a right to protect itself. What is 'unreasonable' under the Fourth Amendment is a function of the totality of conditions existing within our society at any moment in history. Social interests under the police power should give law officers the right to stop users of the highways to check, for instance, their right to use the highway or to check the vehicles for safety standards. *Myricks v. United States* (1967), 370 F.2d 901 (5th Cir.) (Texas); *Lipton v. United States* (1965), 348 F.2d 591 (9th Cir.) (California); *State ex rel. Berger v. Cantor* (1971), 13 Ariz.A. 555, 479 P.2d 432 (license, registration, safety checks); *Mincy v. District of Columbia* (1966), D.C. App., 218 A.2d 507; *City of Miami v. Aronovitz* (1959), 114 So.2d 784 (Florida) (roadblock for license check); *Commonwealth v. Mitchell* (1962), 355 S.W.2d 686 (Kentucky) (roadblock for license check); *State v. Kabayama* (1967), 98 N.J. Super. 85, 236 A.2d 164 (New Jersey) (roadblock for safety inspection); *Cox v. State* (1944), 181 Tenn. 344, 181 S.W.2d 338. Indeed, in California, a state intensively affected by the automobile, the police have been permitted to stop a car on 'founded supicion,' *Wilson v. Porter* (1966) 361 F.2d 412, 415 (9th Cir.), and to effect a brief detention of anyone — including motorists — for investigative purposes whenever 'reasonably . . . necessary to the proper discharge of [their duty].' *Bramlette v. Superior Court* (1969), 273 Cal. App. 2d 799, 805, 78 Cal. Rptr. 532, 535 (Ct. of Appeals)."

Consequently, no one questions the right of law enforcement officers to establish a roadblock to conduct a routine traffic check of all vehicles and drivers passing through that point during a given period of time. Whether the police can single out an individual car and halt its movement for such a check at any time or any place with no reason to suspect any wrongdoing is another question. Solely for the sake of argument, we will assume, without deciding, that this would be a reasonable action for the police to take.[3]

The question then becomes: Once Irwin produced a valid driver's license and registration, was Wright justified in his further actions or was the basis of his initial inquiry satisfied and no further investigation warranted?

As with the initial stop, we must classify this continued detention

---

3. This question apparently is pending before the Supreme Court in the case of *Delaware v. Prouse* (1978), Del., 382 A.2d 1359, review granted, 47 U.S.L.W. 3188.

of Irwin after the routine traffic check as either an arrest or an investigatory stop.

Wright testified that, in the process of checking the driver's license and registration, he: (1) smelled the odor of alcohol; (2) secured from Irwin an admission that he had recently consumed some beer; (3) thought he saw plant material in the prescription bottle; and (4) thought he saw Irwin trying to hide the prescription bottle as he leaned to retrieve the registration from the glove compartment.

Probable cause for an arrest is defined to be facts and circumstances known to the arresting officer which would warrant a man of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense. *Luckett, supra.* Based upon the facts and circumstances known to Wright, would a man of reasonable caution and prudence have believed that Irwin had violated or was violating either the statute proscribing public intoxication or the statute proscribing the possession of marijuana?

Although the statute which creates the offense of public intoxication[4] does not define "intoxication", other sources of definition are available. Ind. Code 9-4-4.5-2, which deals with implied consent to chemcial breath testing, defines "intoxication" as:

"an impaired condition of thought and action and the loss of normal control of one's faculties to a marked degree."

Accord, Ind. Code 16-13-6.1-2, Division of Addiction Services statute; *Hughes v. State* (1912), 50 Ind. App. 617, 98 N.E. 839; Black's Law Dictionary (rev. 4th ed. 1968), "intoxication" p. 957, "drunkenness", p. 587.

Wright's perception of an odor of alcohol and Irwin's admission that he had recently consumed some beer are insufficient to cause Wright to reasonably infer that Irwin was "intoxicated" and in violation of the statute.

Under the statute which defined the offense of unlawful possession of marijuana,[5] Wright would have to have probable cause to believe that

---

4. Ind. Code 7.1-5-1-3.

5. Ind. Code 35-24.1-4.1-11, repealed effective October 1, 1977.

Irwin was knowingly possessing marijuana. From a distance of several feet away, after dark, with the aid of a flashlight, Wright caught a glimpse of a brown prescription bottle and thought he saw plant material inside it. He thought Irwin tried to hide the bottle as he retrieved his registration. In order to reach the registration in the glove compartment on the right side of the dashboard, Irwin had to lean to his right. If he were left-handed, it would be natural for him to reach with his left hand while leaning on his right arm. In any case, any leaning movement to the right would necessarily obscure Wright's view of the center console and, thus, the prescription bottle. These circumstances are insufficient to establish probable cause for a man of reasonable caution and prudence to believe Irwin was violating the statute.

With no probable cause to make an arrest at the time Wright continued to detain Irwin after he had produced his driver's license and registration, this further detention must be classified as a second investigatory stop and its constitutionality must be evaluated in terms of the reasonableness of Wright's action. *Luckett, supra; Madison, supra.*

Ind. Code 35-3-1-1 authorizes an investigatory stop whenever a police officer:

"reasonably infers, from the observation of unusual conduct under the circumstances and in light of his experience, that criminal activity has been, is being, or is about to be committed."

The officer must be able to point to "specific and articulable facts" which reasonably warrant the given intrusion upon an individual's right of privacy. *Madison, supra; Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Were Wright's perception of an odor of alcohol, Irwin's admission that he had been drinking, Wright's glimpse of the prescription bottle, and Wright's conclusion that Irwin was trying to hide the bottle sufficient to satisfy the requirement of Ind. Code 35-3-1-1 and the strictures of *Terry, supra?* We find that they are sufficient. Wright reasonably detained Irwin for further investigation.

The scope of this investigation is circumscribed by Ind. Code 35-3-1-1:

"said officer may stop such person for a reasonable period of time and may make reasonable inquiries concerning the name and address of such person and an explanation of his action."

We must compare with this legislative directive what Wright did not do and what he did do. He *did not* ask Irwin how many beers he had consumed and over what period of time. He *did not* engage Irwin in conversation so that he could look for evidence of intoxication. He *did not* ask what was in the prescription bottle. He *did not* ask to see the bottle.

He *did* ask Irwin to exit the car. He *did* illuminate the interior of the car with his flashlight. He *did* lean into the car and remove a beer bottle from the floorboard of the front seat. He *did* remove two plastic bags from under the driver's side of the front seat.

Wright's actions were clearly outside the limits of Ind. Code 35-3-1-1 which only allows the officer to make "reasonable inquiries" and ask for "an explanation" unless he has probable cause to believe criminal activity is afoot. The evidence seized — the two plastic bags of marijuana — was the fruit of an unlawful investigatory search and, therefore, is not admissible at trial. *Madison, supra.*

The State argues that the bags were admissible under the plain view doctrine of *Alcorn v. State* (1970), 255 Ind. 491, 265 N.E.2d 413, which holds that objects observed in plain view by a police officer who is rightfully positioned to have such a view are not the products of a "search" within the meaning of the Fourth and Fourteenth Amendments. Such is not the case here, however, because Wright did not see the bags under the seat until after he had asked Irwin to exit the car and had leaned into the car to remove the beer bottle. By this time he had clearly exceeded the permissible scope of his investigation and was not "rightfully positioned." His actions were a search and an unlawful one.[6]

Accordingly, we find that the trial court erred in admitting the two

---

6. The admissibility of the prescription bottle would be sanctioned by the doctrine of *Alcorn v. State, supra.* The role played by the bottle, however, is ambiguous from the record. Irwin testified that the bottle had contained a prescription sinus medication and was empty the night of the arrest. Wright testified that the bottle contained plant material when he removed it from the car. The bottle did contain such material when introduced at trial. An Indiana State Police chemist testified that he tested material that was in the bottle when he received it, but the results of the test were not put into evidence. Law enforcement officers testified that the marijuana in the two plastic bags weighed a total of 39 grams and Wright's affidavit to establish probable cause to arrest avers that the plant material he seized from Irwin weighed a total of 39 grams.

plastic bags of marijuana, and all testimony relating thereto, into evidence. The judgment is reversed and this cause is remanded for a new trial pursuant to defendant's request in his motion to correct errors.

Reversed and remanded.

Lowdermilk and Robertson, JJ., concur.

NOTE—Reported at 383 N.E.2d 1086.