## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Jun 10 2015, 9:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Williamson,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff,*

June 10, 2015

Court of Appeals Case No.
49A05-1408-CR-381

Appeal from the Marion Superior Court
The Honorable David Hooper, Magistrate
Cause No. 49F25-1301-FD-2010

**Robb, Judge.**

# Case Summary and Issue

[1] Following a bench trial, David Williamson was convicted of disorderly conduct and public intoxication, both Class B misdemeanors. He was sentenced to 180

days, suspended to non-reporting probation. Williamson appeals his conviction of public intoxication, raising one issue for our review: whether there was sufficient evidence that he was intoxicated. Concluding there was sufficient evidence of intoxication, we affirm.

## Facts and Procedural History

[2] In late December 2012, Williamson and his wife purchased a suite of bedroom furniture for $1,700.00 from a Furniture for Less store. They paid an additional $100.00 for delivery to their home and assembly. The furniture had to be ordered from a catalog because it was not in stock at the store. The store manager, Mike Wallace, helped the Williamsons with their purchase and told them it would be approximately two weeks before the furniture was delivered.

[3] Over the next week to ten days, the Williamsons had several phone conversations with the store and received conflicting information about the status of their order. Finally, on January 8, 2013, Williamson returned to the store with a truck intending to pick up the furniture and assemble it himself. Wallace, two other employees, and several customers were in the store when Williamson arrived at approximately 6:30 p.m. Upon entering the store, he immediately confronted Wallace in a "vulgar" and "very aggressive" manner. Transcript at 8. He "stuck his finger to [Wallace's] head and started pushing" two or three times and then put his hand on Wallace's chest. *Id.* at 8-9. He was loud and obnoxious and threatened Wallace, who "was just more or less shocked at first. Then defense, scared because I mean he was . . . the smell of

alcohol was reeking from his body. So just I didn't know what he was capable of." *Id.* at 10. Store employee Matthew Haseltine also testified that he was able to smell alcohol on Williamson's breath when he was standing "[a] couple feet" away from him. *Id.* at 34.

[4]     Williamson eventually left the store, only to return several minutes later. When Wallace saw him enter, he began "kind of zig zagging, weaving around furniture, not letting him get close to me. I didn't know if he had went [sic] outside to get a weapon." *Id.* at 11. Williamson continued to make threats to Wallace as Wallace tried to keep his distance and Haseltine called the police. Williamson again left the store. Before Wallace and the other employees could go to the front to lock the door, Williamson returned, "swing[ing] the door open and mak[ing] a dead run" at the group. *Id.* at 15. Wallace put his arm up to protect himself and hit Williamson in the face, knocking him down. Williamson told Wallace, "You're fired," and left the store. Employees watched him get into the driver's side of a pick-up truck and drive away.

[5]     Williamson went to a nearby restaurant and ordered a shot of alcohol. When police arrived at the Furniture for Less store at approximately 7:00 p.m., Wallace explained the situation and gave them Williamson's cell phone number. Officer Ivan Ivanov of the Indianapolis Metropolitan Police Department called Williamson and asked him to return to the store.

Williamson returned to the store as a passenger in his wife's vehicle,[1] exhibiting signs of intoxication. His eyes were glassy and bloodshot, he had unsteady balance, he slurred his speech, and he smelled of alcohol. Officer Ivanov tried to do field sobriety tests, but after taking and failing the horizontal gaze nystagmus test, Williamson became belligerent and refused to take any further tests, insisting he was the victim.

[6] The State charged Williamson with intimidation, a Class D felony, and battery, disorderly conduct, and public intoxication, all Class B misdemeanors. Prior to trial, the State moved to dismiss the intimidation count, and the case proceeded to a bench trial on the remaining counts. The trial court found Williamson not guilty of battery but guilty of disorderly conduct and public intoxication. With respect to the public intoxication count, the trial court stated:

> On the public intox I have a witness saying that [Williamson] was drunk when he came in the store. [Williamson] says that he didn't have a drop before he came in the store. He did state that after all this was over he went to [a bar] and had a shot. If I were to believe [Williamson's] version I would have to believe that store employees got together with police after the fact and concocted, no pun intended, their story for court today. Otherwise, to believe [Williamson's] version how would they know . . . how would they have a basis to believe [Williamson] was drunk when he came in the store if the . . . on [Williamson's] version he didn't drink until afterward. That's the only possible way that . . . that could happen. Is the . . . they all got

---

[1] Williamson's wife had driven her own vehicle to the store to meet Williamson but she did not enter the store. She later followed Williamson to the nearby restaurant and again waited in the car while he went inside.

together and made up this story. Furthermore, I'm being asked to disregard officer's testimony which I'm not inclined to do.

*Id.* at 111. Williamson now appeals only his conviction for public intoxication.

# Discussion and Decision

## I. Standard of Review

[7] When we review the sufficiency of the evidence supporting a criminal conviction, we neither reweigh evidence nor judge the credibility of witnesses. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). We only consider "the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* (quoting *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008)). We will affirm a conviction if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* A verdict of guilt may be based upon an inference if it is reasonably drawn from the evidence. *Thang v. State*, 10 N.E.3d 1256, 1258 (Ind. 2014).

## II. Evidence of Intoxication

[8] A person commits public intoxication if he is in a public place in a state of intoxication and endangers his own life or the life of another person, breaches the peace or is in imminent danger of breaching the peace, or harasses, annoys, or alarms another person. Ind. Code § 7.1-5-1-3 (2012). Williamson does not dispute that he was in a public place or that he committed one of the four

conduct elements.[2]  He does, however, contend that there was no proof he was intoxicated when he engaged in conflict with Wallace at the Furniture for Less store.[3]  "Intoxicated" is defined as under the influence of alcohol "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties."  Ind. Code § 9-13-2-86.  Impairment can be shown by evidence of "(1) the consumption of a significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech."  *Stephens v. State*, 992 N.E.2d 935, 938 (Ind. Ct. App. 2013) (citation omitted).  We have also considered a person's "loud and belligerent" behavior to be a "clear sign[ ] of intoxication."  *Wells v. State*, 848 N.E.2d 1133, 1146 (Ind. Ct. App. 2006), *trans. denied*, *cert. denied*, 549 U.S. 1322 (2007); *see also Jellison v. State*, 656 N.E.2d 532, 536 (Ind. Ct. App. 1995)

---

[2] It is somewhat unclear from the record which conduct element or elements the State relied on to prove its case.  The charging information simply lists all four elements.  In its closing argument, the State did not specifically mention any one conduct element.  The State ended its rebuttal argument by asserting, "The State has met its burden with regard to Counts 2, 3, and 4.  [Williamson] endangered his own life by leaving the scene in his vehicle or if not that, he breached the peace.  So we would ask the Court for guilties on all three counts."  Tr. at 109-10.  It appears to us most likely that the State proved Williamson harassed, annoyed, or alarmed Wallace, but as Williamson does not dispute this element, we need not address it specifically.

[3] Though some mention was made by the State during its closing argument of evidence that Williamson was intoxicated when he returned to the store after being summoned by police, Williamson asserts that "to fulfill the behavioral element of public intoxication and secure a conviction, the State had to prove Williamson was intoxicated *during the altercation with Wallace in the store.*"  Brief of Appellant at 7 (emphasis added).  The State seems to concede this is the appropriate timeframe when it argues that it "presented more than sufficient evidence that [Williamson] was intoxicated when he repeatedly caused disturbances at Furniture for Less."  Brief of Appellee at 10.

(finding, among other things, that evidence of defendant's aggressive attitude was a sign of impairment).

[9] Wallace and Haseltine both testified to smelling the odor of alcohol about Williamson when he was in the store. Williamson contends this one factor does not prove he was intoxicated, citing *Irwin v. State*, 178 Ind.App. 676, 383 N.E.2d 1086 (1978). In *Irwin*, we held that a police officer's perception of an order of alcohol and the defendant's admission that he had recently consumed alcohol was insufficient evidence from which to infer that the defendant was intoxicated for purposes of establishing probable cause for an arrest for public intoxication. *Id.* at 682, 383 N.E.2d at 1089-90.

[10] Here, however, evidence of the odor of alcohol was not the only evidence that Williamson was intoxicated. There was also evidence of Williamson's aggressive, belligerent behavior and vulgar tone toward Wallace. Williamson contends that his angry demeanor does not prove he was intoxicated because the trial court "reasoned that [he] 'had every right to be angry' about [the] furniture." Brief of Appellant at 8 (quoting Tr. at 116). However, the trial court went on to say that "I don't think you have the right to get drunk and disorderly." Tr. at 116. It is clear the trial court did not discount his behavior in finding that he was intoxicated.

[11] It was reasonable for the trial court to infer that Williamson was intoxicated from evidence that Williamson "reeked" with the odor of alcohol, tr. at 10, that could be smelled from "[a] couple feet" away, *id.* at 34, coupled with evidence

that he was aggressive in both words and actions. Presumably, even if he was frustrated, Williamson would not act violently and vulgarly if he was thinking clearly and in normal control of faculties. The State provided sufficient evidence of intoxication to support Williamson's conviction of public intoxication.

# Conclusion

[12] Evidence of the odor of alcohol plus Williamson's behavior was sufficient to support the trial court's judgment that Williamson was guilty of public intoxication. His conviction is affirmed.

[13] Affirmed.

May, J., and Mathias, J., concur.